O. S. STAPLEY CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7685. Promulgated September 26, 1928.

*R. M. O'Hara, Esq.*, and *William Ristig, Esq.*, for the petitioner.
*Paul L. Peyton, Esq.*, for the respondent.

OPINION.

LITTLETON: With respect to the debts represented by open accounts in the amount of $7,904.90, it was stipulated at the hearing that these accounts were ascertained to be worthless during the taxable year. This leaves for consideration with respect to this item only the question as to whether they were charged off within the meaning of the statute so as to entitle the petitioner to the deduction on account thereof. While we have held that the statute is clear and unambiguous as requiring that the accounts must be charged off, we have not required, nor do we think the statute contemplates, any particular method of accomplishing this purpose. In other words, we have recognized that accounting and bookkeeping systems are far

from being standardized and that the " charge-off " may be effected in a variety of ways and yet be sufficient for substantial compliance with the statute which is all we consider necessary. As we said in *Mason Machine Works Co.*, 3 B. T. A. 745, " It is not the physical act done within the year to which Congress has referred, but to the setting up of evidence of the ascertainment of worthlessness substantially as of the date of such ascertainment and in confirmation thereof."

When viewed in the foregoing manner, we find that the petitioner substantially complied with the statute in writing off these accounts. After it had been ascertained that certain accounts were worthless, an entry was made charging " Trading Account " (Profit and Loss) and crediting an account denominated " Bad and Doubtful Accounts." This latter account was segregated for each of the stores operated by the petitioner on the basis of the worthless accounts applicable to each store. In explanation of why the credit was made in this way rather than to the accounts themselves, which would have eliminated them from its books, petitioner's secretary-treasurer testified as follows:

Q. Mr. Stapley, the stipulation just read into the record shows that no entry was made on the individual accounts receivable at the time these bad debts were charged off. What happened to the individual accounts?

A. They were placed in the bad debt ledger; taken from the record ledger and placed in a bad debt ledger.

Q. Were they kept in that bad debt ledger indefinitely?

A. No, not indefinitely; we kept them there until such time as they are absolutely determined hopeless, and then we filed them away.

Q. And they are thereupon no longer a part of the records?

A. No, sir.

Q. What was your reason for not doing this with the individual accounts receivable and for not actually charging these bad debts off on the accounts receivable control account, why did you charge them to a bad debt ledger and keep them before you?

A. We always kept them before us in the hope of collection; just because we charge them off, we do not entirely give up the idea of trying to enforce collection.

The same witness further stated that:

My intention was and what I thought was being done was that they were being charged off; not a reserve, but charged off.

Whatever amounts were collected on these accounts in subsequent years were reported as income.

When we consider the above facts, together with the frank and unequivocal character of the witness's testimony, we can not escape the conclusion that what the petitioner sought to accomplish was a " charging off " of these accounts. The first objection raised by the respondent to such a conclusion is the fact that in preparing the

balance sheet which was submitted with its return, the accounts were shown as assets with an item on the liability side in the same amount denominated "Reserve for Bad Debts." That is, what the respondent says is that the effect of the "charge-off" was to charge "Profit and Loss" and credit "Reserve for Bad Debts" and thus not only have the assets on the balance sheet, but also leave the surplus unimpaired. But we do not understand this to be the effect of the entries. We find no evidence, either in the testimony or in the books which were submitted in evidence showing the existence of a reserve account on the petitioner's books. While the record shows that the accounts as such remained on the books after the making of the "charge-off" entry, it appears that they were so kept merely for the purpose of maintaining a follow-up memorandum of each account. The accounts which both parties to this proceeding have stipulated were worthless, were so designated by individual accounts placed in a bad debt ledger, and segregated for the four stores where the accounts were incurred. In this manner, accounts which were worthless and which are here shown to have been charged to profit and loss were eliminated from among the good accounts. In this sense, accounts which were worthless within the meaning of the statute could be followed up, and only for this purpose does it appear that they remained on the petitioner's books. Apparently, then, when petitioner came to prepare a balance sheet as at September 30, 1920, to accompany its income-tax return, it reflected the existence of these accounts on its books by showing the accounts in total on the asset side and a reserve in the amount of the worthless debts on the liability side. From all the facts in the record, we do not interpret this as meaning that the reserve shown on this balance sheet was considered as a part of surplus, but rather that it was in the nature of a valuation reserve which had the effect of offsetting the worthless accounts shown on the asset side.

In consideration of the foregoing, the Board is of the opinion that the acts done by the petitioner constituted a substantial compliance with the statute with respect to charging off the open accounts in the amount of $7,904.90, and, accordingly, a deduction of this amount (which is $2,262.78 in excess of that previously allowed) should be allowed as a deduction from gross income.

With respect to the trade acceptances, the evidence introduced is insufficient to show that they were ascertained to be worthless during the taxable year. The evidence consisted merely of a statement showing that the trade acceptances had been charged back to the petitioner by the bank. This does not prove worthlessness.

The claim of the petitioner for a deduction on account of notes receivable in the amount of $3,641.62, included in the total amount of $15,871.72 representing so-called bad debts, was withdrawn by the

petitioner and no evidence was introduced in respect thereto. The action of the respondent in disallowing the deduction is, therefore, sustained.

This leaves for consideration the question as to whether the petitioner is entitled to have its purchases increased over that allowed by the respondent for goods not entered in the purchases account until after the close of the taxable year, but invoices of which were dated prior to the close of the year.

The items included in these invoices could not be identified. It could not be determined definitely whether they were included in sales made during the year or whether they were included in inventories. The witness for the petitioner testified as to the general custom of the petitioner and that if that custom had been followed with respect to these particular goods, the goods would undoubtedly have been received before the close of the fiscal year 1920 and would have either been included in the sales or inventories at the close of the year. The testimony at most gives rise only to a presumption and in our opinion is not sufficient to establish the claim made. There is no preponderance of evidence to show that the action of the respondent in this regard was incorrect.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*