EWALD & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34226. Promulgated February 13, 1930.

*E. L. Greever, Esq.*, for the petitioner.
*Ralph Scott, Esq.*, and *E. M. Niess, Esq.*, for the respondent.

OPINION.

TRAMMELL: The Revenue Acts of 1921 and 1924 provide in section 234 (a) that in computing the net income of a corporation there shall be allowed as deductions:

(5) Debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); * * *

Regulations 62, promulgated by the Commissioner under the provisions of the Revenue Act of 1921, provides in part as follows:

Art. 151. *Bad debts.*—Bad debts may be treated in either of two ways—(1) by a deduction from income in respect of debts ascertained to be worthless in whole or in part, or (2) by a deduction from income of an addition to a reserve for bad debts. For the year 1921 taxpayers may, regardless of their previous practice, elect either of these two methods and will be required to continue the use in later years of the method so elected unless permission to change to the other method is granted by the Commissioner.

And in article 151 of Regulations 65, promulgated by the Commissioner under the provisions of the Revenue Act of 1924, it is provided in part as follows:

* * * Taxpayers were given an option for 1921 to select either of the methods mentioned for treating such debts. See article 151, Regulations 62. The method used in the return for 1921 must be used in returns for subsequent years and for returns under the Revenue Act of 1924 unless permission is granted by the Commissioner to change to the other method.

In *Kay Manufacturing Co.*, 18 B. T. A. 753, we said:

The option to deduct "a reasonable addition to a reserve for bad debts" in lieu of "debts ascertained to be worthless and charged off within the taxable year," first appeared in the Revenue Act of 1921. In the regulations promulgated under that Act, the respondent granted permission to all taxpayers, regardless of their previous practice, to elect, for 1921, either of the two methods prescribed by statute for treating bad debts, with the understanding that the election made for 1921 would be binding upon them for all subsequent years unless permission to change was granted by him. The requirement that a taxpayer first obtain the permission of the respondent before making a change in the method of treating bad debts was necessary in the interest of an orderly procedure in examination of returns. * * * It is our opinion that the requirement of the regulations that a taxpayer who exercised an election for 1921 as to the method of treating bad debts shall be bound by such election for all subsequent years, unless it asks the permission of the respondent to change to the other method and has a reasonable right to obtain it, is a valid exercise of discretion by the respondent.

The petitioner in the instant case elected to pursue the charge-off method of claiming deductions for bad debts in its return for 1921, and in 1922 changed to the reserve method without obtaining permission of the respondent. Accordingly, the deductions claimed by the petitioner of additions to its reserve for bad debts in the taxable years involved may not be allowed, and the action of the respondent in disallowing such claimed deductions is approved.

It does not follow, however, that the petitioner is not entitled to deductions for the debts ascertained to be worthless and charged off within the respective years, notwithstanding it claimed in its return only deductions of additions to its reserve for bad debts. The right of a taxpayer to the deduction provided in the statute above quoted is not to be destroyed because of its initial failure to put its claim

on the technically proper ground. *Rhode Island Hospital Trust Co. v. Commissioner* (C. C. A.), 29 Fed. (2d) 339.

The initial failure of the petitioner in this proceeding to put its claim on the technically proper ground can not operate to destroy its right to deduct the amount of debts ascertained to be worthless and charged off in each taxable year. However, the respondent refused to allow said amounts as deductions on the theory that they were not charged off in the respective years. The amounts ascertained to be worthless, as set out in our findings of fact, were stipulated by the parties. The only question remaining, then, respecting the petitioner's right to deduct said amounts is whether or not they were charged off in the taxable years within the meaning of the statute.

We have consistently held that bad debts, to be deductible in computing net income, must not only be determined to be worthless but must be charged off, and both actions must be performed by the taxpayer within the taxable period. *St. Joseph Valley Bank,* 15 B. T. A. 185. But the statute does not provide any particular manner or method for the charging off of a bad debt. *Thomas J. Avery,* 5 B. T. A. 872. Whether a charge-off has been effected is not dependent upon any special form of bookkeeping, but must be determined from the circumstances in each case. The fundamental purpose in requiring the charge-off is to evidence the worthlessness of the debt, or, in other words, to establish the loss sustained by the taxpayer, and this end is accomplished and the charge-off effected by the elimination of the bad debt from the taxpayer's assets. If the debt is in fact ascertained to be worthless, it should no longer be treated or considered as an asset. The effective elimination of the debt as an asset meets the statutory requirement as to charge-off. Cf. *Thomas J. Avery, supra; O. S. Stapley Co.,* 13 B. T. A. 557; *Lipman's, Inc.,* 13 B. T. A. 1274.

The method pursued by the petitioner in this case with respect to the charge-off or elimination of its bad accounts is described by the following testimony of the witness Zulandt, who was vice president of the corporation and had supervision of all of its books of account:

Q. Where is the head office?

A. The general books of the corporation are kept at Johnson City, but the accounts with the individual customers are kept at the various branch stores, hotels and boarding houses.

Q. What is the chief store of the company?

A. The principal store is at Erwin, Tennessee.

\*     \*     \*     \*     \*     \*     \*

Q. How were the books kept at that store as to accounts with the customers?

A. The accounts with the individual customers were kept on the bookkeeping machine, and on loose-leaf ledger sheets, one or more sheets for each customer.

Q. What, if anything, was done with the account so kept when it was determined to be bad?

A. They had a separate drawer or filing case to which they transferred these individual sheets whenever the accounts were found to be bad or worthless. A report or list of these accounts was made to the general office at Johnson City at the close of each year, showing item by item what accounts were in the good ledger and what accounts were in the bad ledger.

Q. You have heard the stipulation read into the record here a few minutes ago. Were the accounts determined to be bad as stated in that stipulation so treated at the store at Erwin; that is, were the sheets on which the accounts were kept transferred from the good to the bad ledger?

A. Yes, they were.

\*    \*    \*    \*    \*    \*    \*

Q. How did you regard or how did the petitioner regard this transfer of the sheets from the good ledger to the bad ledger when the accounts were determined to be bad? Did you treat that as a charge-off or not?

A. We considered it a charge-off so far as the individual ledger at Erwin was concerned, but we made no entry on the books at Johnson City to reflect that, as that was reflected in our books at Johnson City by this entry to reserve for bad debts.

This action of the petitioner, we think, constituted a substantial compliance with the requirement of the statute respecting a charge-off of debts ascertained to be worthless. See *O. S. Stapley Co.*, *supra*.

The deficiencies will be redetermined by allowing deductions, in computing net income, of the amounts of debts ascertained to be worthless and charged off in the respective taxable years as set out in our findings of fact above.

*Judgment will be entered under Rule 50.*