**BROWN v. UNITED STATES.**

No. 19240.

District Court, E. D. Pennsylvania.

May 14, 1937.

Weill, Blakely & Nesbit, Alfred S. Weill, and Thorpe Nesbit, all of Philadel-, phia, Pa., and Hugh Satterlee, of Washington, D. C., for plaintiffs.

Charles D. McAvoy, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., and Edward P. Hodges, Sp. Asst. to Atty. Gen., for the United States.

WELSH, District Judge.

This is a suit to recover $16,076.09 with interest, as a claimed overpayment of income taxes in the year 1932. The case was

826

tried without a jury under the Tucker Act (24 Stat. 505).

The evidence showed that plaintiff had held a $97,000 mortgage, guaranteed as to principal and interest by the Merion Title & Trust Company of Ardmore, Pa., secured on property in Delaware county, owned by one Dougherty. For default, plaintiff foreclosed the mortgage in June, 1932, at which time the mortgage debt amounted to $98,-650.73. Plaintiff bid in the property for the customary $50 deposited to cover the sheriff's costs. Dougherty meantime had died penniless, the Merion Title & Trust Company had failed and closed its doors in 1932, and for.these reasons plaintiff, after taking title to the property, took no steps to obtain a deficiency judgment. On taking over the mortgaged real estate, plaintiff referred the matter to his secretary Mrs. Rumsey who, as the result of their conversation, made an alteration in her books of the following nature: She placed a parenthesis or bracket around the word "mortgage" on that page of her books which carried the mortgage account, and immediately below that account, on the same page, she opened a new account called a "rent income account," in substitution of the mortgage account theretofore carried. This was done in July, 1932, and thereafter all revenues received from the property were entered in the rent income account; nothing further being entered in the bracketed mortgage income account. This alteration of her books, Mrs. Rumsey testified, was the method adopted by her for signifying that the mortgage debt had been charged off on the plaintiff's books in the sum of $98,650.73, and transferred to the real estate account in the like valuation of $98,650.73. Later, on December 31, 1933, an additional entry was made in the books, "as of December 31, 1932, reducing the valuation of the real estate to the sum of $63,951, or a resultant loss or bad debt of $34,699.73." This additional entry in the books was occasioned by the fact that a formal appraisal of the real estate was made on December 31, 1933, at the request of the plaintiff, by a real estate expert named Coleman, in which appraisal Mr. Coleman reported that a fair value of the real estate in the year 1932 was not $98,650.73, but $63,951, or a difference of $34,699.73.

The plaintiff claimed no deduction for the difference in the valuation of the real estate, in making his income tax return for 1932, believing that he must await a sale of the property before he would be entitled to the deduction. He was disabused of this conception by his tax counsel in 1933, and in January, 1934, after receiving Mr. Coleman's appraisal, he claimed the deduction of $34,699.73 and made demand for a refund of $16,076.09 (the amount in suit), as an overpayment of income taxes for the year 1932. The refund was refused. This suit followed.

Section 23 (j) of the Revenue Act of 1932, 26 U.S.C.A. § 23 (k) and note, provides that "bad debts" shall be allowed as deductions, provided they are "*ascertained to be worthless and charged off within the taxable year.*"

There is much in this case to show that the plaintiff made an honest effort to charge off the mortgage debt of $98,650.73 in 1932. The plaintiff is a lawyer engaged principally, as general counsel or direction, in the management of corporations. As stated, he intrusted the charging off of his investments to his secretary Mrs. Rumsey. Ordinarily what the secretary did to effect a charge-off on her books might well be deemed a substantial compliance with the statutory requirements, without the necessity for a formal declaration, Shiman v. Commissioner, 60 F.(2d) 65 (C.C.A.2). Even the Board of Tax Appeals itself has recognized that bookkeeping systems are far from being standardized, and have held that the "charge-off" may be effected in a variety of ways, and yet be sufficient, since there is no particular method of accomplishing this purpose. Stapley Co., Inc., v. Commissioner, 13 B.T.A. 557, 559.

But was the $98,650.73 mortgage debt so successfully charged off in 1932 as wholly to eliminate the debt as an asset on the books of the plaintiff? When the plaintiff's secretary "charged off" the mortgage account, and substituted for it the real estate account, she testified that thereafter she treated the two accounts as of equal value on her books. That is to say, the real estate account was given the same valuation as the former mortgage account of $98,650.-73, notwithstanding that the plaintiff testified that he knew in 1932 that the real estate was worth "very much less" than the amount of the mortgage. Under these circumstances, we cannot find that the debt of $98,650.73 was successfully eliminated on the books in 1932, and yet such elimination of the debt as an asset of the plaintiff appears to have been indispensably neces-

sary, in order to constitute an effective charging off of the debt. Ewald & Co. v. Commissioner, 18 B.T.A. 1130, 1133. We therefore are obliged to find that the $98,-650.73, *considered as a worthless or bad debt,* was not charged off within the taxable year of 1932, within the meaning and intent of section 23 (j) of the Revenue Act, and the decisions of the Board of Tax Appeals.

The plaintiff raises a remaining proposition. He says, in effect: "I had a debt of $98,650.73 which proved to be worthless in 1932, but in substitution for that debt I took real estate whose admitted value of $63,951 in 1932 I did not ascertain until the year 1933. I therefore sustained a partial 'loss' on my debt of $34,699.73 and (granting that it was a 'loss'), even the defendant admits that in that case I was not required to charge off the loss on my books in order for it to be deductible as a loss."

It appears to be true that, under the revenue acts, Congress has drawn the distinction contended for between debts and losses, and that losses mean losses sustained to physical property by fire, theft or the like. Porter v. United States, 27 F.(2d) 882 (C.C.A.9); Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 189, 54 S. Ct. 644, 647, 78 L.Ed. 1200. However this may be, we are unable to sustain the plaintiff's theory of a "loss" in the sense contended for by plaintiff. His claim had its origin in his possession of an interest-bearing bond accompanying a mortgage secured on real estate. The obligor in the bond failed to pay the interest thereon, and the plaintiff had the right to enter up judgment on the bond and issue execution. The fact that the plaintiff elected to foreclose the mortgage and appropriate the mortgaged premises to himself, in the absence of buyers at the sheriff's sale, did not alter the fact that his fundamental claim, being on an interest-bearing obligation, was a debt. Porter v. United States, 27 F.(2d) 882 (C.C. A.9). The fact that the mortgaged premises appropriated in 1932 was treated by the plaintiff as of the value of $98,650.73, when in fact its fair value was ascertained by him in the following year to be only $63,951, proves no more than that he sustained a partial "bad debt" (not "loss") of $34,699.-73.

The finding is, therefore, that the plaintiff did not ascertain his partial bad debt of $34,699.73 to be worthless and did not charge it off within the taxable year of 1932, as required by section 23 (j) of the Revenue Act of 1932. As therefore he is not entitled to recover the sum of $16,076.-09, with interest, claimed in this suit as an overpayment of income taxes for the year 1932, judgment is given for the defendant.