**BROWN v. UNITED STATES.**
**No. 6548.**

Circuit Court of Appeals, Third Circuit.
March 2, 1938.

488

THOMPSON, Circuit Judge, dissenting.

———◆———

Weill, Blakely & Nesbit, of Philadelphia, Pa. (Alfred S. Weill, of Philadelphia, Pa., Hugh Satterlee, of Washington, D. C., and Thorpe Nesbit, of Philadelphia, Pa., of counsel), for appellant.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Lee A. Jackson, and Milton Carr Ferguson, Sp. Assts. to Atty. Gen., Alexander Tucker, of Washington, D. C., J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., and Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., for the United States.

Before DAVIS and THOMPSON, Circuit Judges, and DICKINSON, District Judge.

DICKINSON, District Judge.

The plaintiff-appellant made an investment in a mortgage of one John J. Dougherty, secured upon premises known as the "Four Corners Property." The mortgage was for $100,000, and was assigned to the appellant by a trust company for a consideration of about $98,000. Incidentally the assignor guaranteed the mortgage principal and interest. The mortgagor failed and died hopelessly insolvent, and the trust company guarantor also became insolvent. On default the mortgage was foreclosed and the mortgaged premises bought in by the mortgagee for the nominal sum of $50—a sum insufficient to pay costs. The date of sale was June 6, 1932. The mortgage was in the usual form of one to secure the payment of the obligor's bond for $100,000. A deficiency judgment, if recovered against the mortgagor, is treated as uncollectible as would likewise be a judgment against the guarantor. The mortgaged premises are, however, admitted to have "a fair market value" of something more than $63,000. On the basis of a debt claim against the mortgage debt obligor and his guarantor, the loss of the appellant is a total one of about $98,000. On the basis of a mortgage investment loss it is about $35,000. The appellant made no claim for a loss in his 1932 tax return because he thought he could make no claim until he had sold the mortgaged property. He discovered his error within the time allowed for an amended return, and made his claim. It is admitted that if he had the right to have his loss deducted from his taxable income for the year 1932 he should have judgment; otherwise not.

■ The proposition is likewise accepted that it is not enough that the taxpayer should have met with a loss; the loss must be such a one as the taxing laws allow to be deducted. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348.

The defendant asserts that although this taxpayer has met with a loss, it is not deductible because of his failure to comply with the formalities prescribed for its ascertainment. This thus becomes the only question arising on this appeal.

The applicable statute is the Revenue Act of 1932, c. 209, 47 Stat. 169. Clause (e), section 23, of the act, 26 U.S.C.A. § 23(e), and note, is devoted to "Losses by Individuals." Such is the loss here. These are classified as of three types: (1) Those incurred in trade or business. (2) Those "in-

curred in any transaction entered into for profit, though not connected with the trade or business." (3) Those which may be described as physical damage to property.

The appellant was not engaged in any trade or business, and this case belongs to the second class. Clause (j) of section 23, 26 U.S.C.A. § 23(k) and note, is devoted to "Bad Debts," and authorizes the Commissioner to allow for them if "debts ascertained to be worthless and charged off within the taxable year." Whether the appellant's loss is a "Bad Debt" will be discussed later. The Regulations adopted to aid in the administration of this tax law provide for the very fact situation here presented in Regulation 77—Article 193. It is headed, "Uncollectible deficiency upon sale of mortgaged or pledged property." The Regulation is that "where mortgaged or pledged property is lawfully sold for less than the amount of the debt and the mortgagee or pledgee ascertains that" (the unpaid part of the debt) "is uncollectible and charges it off," he may deduct it. There is an added clause: "In addition where the creditor buys in the mortgaged or pledged property, loss or gain is realized measured by the difference between (the debt) and the fair market value of the property."

It is further provided that: "The fair market value of the property shall be presumed to be the amount for which it is bid in by the taxpayer in the absence of clear and convincing proof to the contrary." This certainly means that had the taxpayer made claim in the 1932 tax return for a total loss on the theory that the mortgaged property was worth only $50, "clear and convincing proof" might have been offered that it was worth something more than $63,000 and the loss determined. The admission of the taxpayer would be such proof. There is a similar like class made of "Bonds."

All this is admitted by the appellee, but it says no claim for this loss was made in the return for the taxable year 1932, and it can be allowed in the amended return only if the loss was ascertained and charged off within the 1932 taxable year, and this loss, although suffered, was not ascertained or at least not so charged off. The learned trial judge held that the loss or bad debt was not "charged off" by the taxpayer within the meaning of the revenue statute, and hence gave judgment for the appellee.

■ Incidentally much time and space has been devoted in the oral argument and printed briefs to the question whether the failure of the taxpayer to realize on this mortgage investment resulted in a bad debt or a loss. The truth is that a mortgage is amphibious. When given, as is usual and as here, to secure the payment of a bond, the bond is a debt, and if worthless is a bad debt. On the other hand, a mortgage is a conveyance. It is conditional, but none the less a conveyance, which becomes absolute if the grantor does not pay his bond. This right to redeem is called the mortgagor's equity of redemption which may be foreclosed and in consequence gone. The very purpose of a foreclosure proceeding is to put an end to the right to redeem and thus to make the conveyance to the mortgagee absolute and unconditional. In this view a mortgage is an investment in real estate. It is idle, however, to spend time over this question because the Regulations classify cases such as this as "bad debts," and the District Court so ruled it to be. It is a "bad debt" loss. The sole question is whether it was "ascertained and charged off" within the taxable year.

■ We should be reminded that the Revenue Act distinguishes between bad debts incurred in the course of a trade or business and bad debts incurred in transactions in which the taxpayer was not engaged in any trade or business. It is here that we think the learned trial judge was inadvertently led into error. He has applied to this taxpayer the test which is properly applied to those engaged in a trade or business. In the conduct of a business there is an account with every debtor against whom a charge is made. These accounts figure in the assets of the business. If any of them become uncollectible the books in which the accounts are kept do not truly reflect the financial state of the business. To correct this bad accounts are "charged off," or, in the language of the Regulations, a "reserve for bad debts" is set up. The requirement to so "charge off" has an obvious purpose and has a definite meaning, not only of substance, but of form. It does not have this meaning in the case of an individual mortgage investment by one not engaged in trade or business. He consequently is put in a separate class. It is fair to assume that one engaged in trade or business who sells on credit has an account with his debtor. It is not fair to assume that an individual investor makes an investment the subject of a book entry. He may keep no books or his system may be a very informal

one. The law has set up no standard nor is he penalized for his bad booking, or indeed for his failure to keep books. All that is required is that some record be kept of the substantial fact of a loss incurred. Not only do all the cases support this proposition, but the appellee accepts it. O: S. Stapley Co. v. Commissioner, 13 B.T.A. 557; Pate v. Commissioner, 13 B.T.A. 1236; Shiman v. Commissioner, 2 Cir., 60 F.2d 65, and other cases cited in appellant's brief.

■ The question is thus narrowed to the one of whether the taxpayer's records show the substantial facts that the loss here claimed had been "ascertained and charged off" within the taxable year. It might be admitted that his system of bookkeeping was crude and informal. This, however, we would not find. He did not, it is true, treat the mortgagor and obligor as a debtor by charging up to him the mortgage debt. He followed, however, the usual and what may be regarded as the proper system by entering a mortgage investment when made as a mortgage investment. The appellant did this by the entry, "Mortgage—Four Corners Prospect Park Delaware County," with a memorandum showing the cost·price and followed by an interest account in which was entered the interest charges and credits for payments. If the mortgage was foreclosed and the property bought in the system called for the closing of the mortgage account by crediting it with what the property sold for and opening an account with the real estate with a secondary account of rents received from it. When the mortgagor defaulted the mortgage in this case was foreclosed and the bookkeeper directed to charge it off. This she did by eliminating the word mortgage by inclosing it · within brackets and making of the mortgage account a real estate account and changing the subaccount from an interest income account to a rent income account. This meant and disclosed that the mortgage had been wiped out and brought only $50, but that the mortgagee had acquired for the $50 the mortgaged property. Had the claim been made in 1932 the taxpayer could have claimed a total loss but would have been required to reduce it by the "fair market value" of the acquired real estate. As soon as he learned he could do this he had for his own guidance the property appraised and entered this valuation in the account. The loss was "ascertained" and was charged off within the taxable year. We do not think more was required of him. The case was tried to the court without a jury. The court found the two ultimate facts that the loss had not been "ascertained" nor had it been "charged off" within the taxable year, and the consequent conclusion that the defendant should have judgment.

■ The plaintiff and defendant each asked for specific fact findings and conclusions of law. The plaintiff's requests numbered eighteen and the defendant's nineteen. There are in addition nine specific reasons for judgment for and against the plaintiff. The court made no formal answer to any of them. His failure to do so has been assigned for error. We think the court has substantially complied with Equity Rule 70½, 28 U.S.C.A. following section 723.

■ A helpful classification of facts, as has often been noted, is into evidentiary and ultimate fact findings. The latter usually are few. Seldom indeed more than one. The former are almost without number. When the court finds the ultimate fact upon which its conclusions of law is based, it ordinarily need not go beyond this. This rule applies to the instant case. There may of course be exceptional cases in which one or more evidentiary facts are controlling and should be found, but the present case is not one of them. The fact findings made lead to the final stand of the appellee. This is upon the proposition that the case is ruled by a fact finding which an appellate court should not disturb. We point out that the finding is of an ultimate fact. This is no more than an inference drawn from the evidentiary facts. On such a finding the appellate court has all before it which the trial court had. The rule invoked does not apply to ultimate fact findings.

There is here no controversy over the evidentiary facts. The error into which the learned trial judge fell, as before stated, was in applying to this appellant, the test which applies to those engaged in a trade or business. This is not such a case, but a transaction case. To end this litigation we have asked counsel to agree upon the sum for which the appellant should have judgment, if any.

Counsel having by stipulation filed herewith agreed upon the sum for which judgment should be rendered if for the plaintiff, the judgment of the District Court is reversed, and the cause remanded to that Court, with directions to enter judgment in favor of the plaintiff-appellant and against the defendant-appellee, for the sum of $16,-

076.09, together with interest as provided by law.

THOMPSON, Circuit Judge (dissenting).

From the uncontradicted facts found by the trial judge sitting without a jury, I am constrained to conclude as a matter of law that the taxpayer is not entitled to the deduction permitted by section 23(e) and (j) of the Revenue Act of 1932, 26 U.S.C.A. § 23(e, k) and note, since he failed to ascertain the debt to be worthless and to charge it off within the taxable year.