AMERICAN UTILIZATION COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90527. Promulgated August 11, 1938.

*R. G. Cherry, Esq.*, for the petitioner.
*D. D. Smith, Esq.*, for the respondent.

### OPINION.

BLACK: We shall first take up respondent's contention that petitioner in 1934 sold to two of its stockholders, Frank and Robert Goldberg, its entire holdings of stock in American Cotton Mills Number Two, and that by reason thereof petitioner did not own any stock in the corporation during the year 1935 and therefore is not entitled to the deduction of any loss by reason of the stock becoming worthless in that year. This was the reason given by respondent in his deficiency notice for his disallowance of the claimed loss and if petitioner has not overcome the correctness of this determination, it loses.

We think petitioner has sustained its burden of proof on this issue. Petitioner introduced the testimony of three witnesses who testified that although entries on petitioner's books made in December 1934, showed a sale by petitioner to two of its stockholders, Frank and Robert Goldberg, of all its shares in American Cotton Mills Number Two for the sum of $2,000, that nevertheless the purported sale was only conditional and that it was understood and agreed by all parties to the transaction that unless a loan was obtained from the Reconstruction Finance Corporation, which was to be used in effecting a merger between American Cotton Mills Number Two and other cotton mills owned by Frank and Robert Goldberg, then the sale should not be consummated. The testimony was that the Reconstruction Finance Corporation definitely refused the loan in 1935, and the whole deal fell through and the sale of the stock to Frank and Robert Goldberg was not consummated. The stock book of American Cotton Mills Number Two was introduced in evidence to show that there was never any transfer on the books of that company of the shares of stock from petitioner to Frank and Robert Goldberg. The stock certificates themselves were introduced in evidence and show that the stock still stands in the name of petitioner and that the certificates were never endorsed in blank and do not bear any assignment of any kind to any one.

The testimony was further to the effect that these shares of stock were never delivered by petitioner to Frank and Robert Goldberg, and that there was no agreement to deliver them unless the loan from the Reconstruction Finance Corporation was granted.

The testimony further showed that, after the Reconstruction Finance Corporation declined the proposed loan, the book entries which were made in 1934 were reversed. It is true that this reversal of book entries seems to have been made after a revenue agent had audited petitioner's income tax return for the year 1934, and had informed petitioner that its claimed loss of $98,000 by reason of the alleged sale of the stock by petitioner to Frank and Robert Goldberg would be disallowed, in which action petitioner acquiesced. Inasmuch, however, as the evidence shows that the reversal of entries on petitioner's books was in accordance with the facts as they existed, we do not think that the fact that these reversing entries were made after the revenue agent's audit is of any controlling significance. Book entries are evidential, but not conclusive. *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179. We find from all the evidence in the case that petitioner was the owner of all the stock of American Cotton Mills Number Two on the basic date in question.

Respondent contends in the alternative that even if it be held that petitioner was the owner of the stock in question on the basic date, nevertheless the stock did not become worthless in 1935, but became worthless in some prior year and by reason thereof petitioner is not entitled to deduct the claimed loss. While respondent did not determine in his deficiency notice that the stock became worthless in a prior year, he did make this contention at the hearing. At any rate when a taxpayer is claiming a deduction of a loss and the Commissioner has disallowed it, it is the burden of the taxpayer to show that the loss was *sustained* in the taxable year. Where one is claiming a loss because of the worthlessness of stock, it is not enough to prove that the stock *was* worthless in that year, but it must be proved that the stock *became* worthless in that year. *Alfred Hofner*, 31 B. T. A. 338. Has petitioner met its burden of proof in this respect? We think it has. True enough, the facts show that American Cotton Mills Number Two was in bad financial condition in 1934, but it was still actively operating its plant and we doubt if petitioner would have been justified in contending that the stock was worthless in 1934. Undoubtedly it had a very small value in 1934. That fact is not only conceded by petitioner, but is evidenced by petitioner's willingness to sell it to Frank and Robert Goldberg for $2,000. But mere depreciation in the value of stock, even to almost the vanishing point, does not entitle a taxpayer to take a deduction of his investment therein. This is permissible only when the stock has become entirely worthless and usually some identifiable event should occur in the taxable year to determine such worthlessness. It is true that where a corporation is insolvent and *ceases* business, and it is clear that the liabilities exceed the value of the assets, and there will be

nothing to distribute to stockholders, that is such an identifiable event and the stock becomes worthless in that year, and the taxpayer who owns stock in such a corporation should take a loss in that year rather than wait for a later year when the affairs of the corporation are wound up by liquidation. Cf. *Charles W. Deeds*, 14 B. T. A. 1140; *Henry W. Cushman*, 13 B. T. A. 41; *Edward J. Slater*, 12 B. T. A. 60; *Mark D. Eagleton*, 35 B. T. A. 551; affd., 97 Fed. (2d) 62. But the situation is different where the corporation continues actively in business. The court in *Mark D. Eagleton*, *supra*, pointed out the difference in the following language: "This conclusion is not opposed to *Burnet* v. *Imperial Elevator Co.*, 66 Fed. (2d) 643, this court. There the company was to and did continue in operation thereafter (P. 645) while here there was no showing of any intention to operate after September 1931, and there was no business of any kind continued thereafter."

We do not wish to be understood as holding that in no case should the stock of a corporation be held to be worthless while it continues in active operation. There are situations where the contrary is true, such for example as in *Claude D. Cass*, 32 B. T. A. 713; affd., 83 Fed. (2d) 841, where a railroad company had been operated by a bondholder's protective committee for nearly ten years prior to the taxable year in question and there was an ever mounting deficit, and during the period the corporation's unpaid and defaulted interest had more than doubled. On such facts we held that petitioner had failed to overcome the correctness of respondent's determination in disallowing the claimed loss. In the instant case, the facts are more like those in *Olds & Whipple, Inc.* v. *Commissioner*, 75 Fed. (2d) 272, in which the court reversed the Board's action in affirming the Commissioner's disallowance of the claimed loss on worthless stock. In that case, the court, among other things, said:

The fact that the assets were insufficient to meet the operating liabilities may properly be taken as evidence of worthlessness of stock, but it is not conclusive. Actual worthlessness should be the test, and if those in charge of the operations of the corporation, acting in good faith, believe that they might work out of their business conditions wherein losses were sustained, and did so, realizing some profit and reducing the deficit, it may not be said that the stock was actually worthless. A real loss is sustained when all chances or possibilities of collection have been effectively destroyed.

In the instant case all chances or possibilities of petitioner ever realizing anything out of its investment in the stock of American Cotton Mills Number Two was effectively destroyed by the foreclosure which took place in 1935. By this foreclosure all property of American Cotton Mills Number Two was sold and the price received from the sale was less than sufficient to pay the company's creditors and there was nothing left for disbursement to the stock-

holders. This was the identifiable event which clearly and unmistakably fixed petitioner's loss. Cf. *Burnet* v. *Imperial Elevator Co.*, 66 Fed. (2d) 643; *Charles Heiss*, 36 B. T. A. 833.

But, although we hold that the stock of American Cotton Mills Number Two became worthless in 1935, we can allow only the loss which petitioner actually sustained. Petitioner paid $100,000 for the stock and would be entitled to deduct that entire amount were it not for the fact that the two corporations filed consolidated returns for some of the years, in which returns petitioner has had the benefit of having its net income reduced by the losses of the American Cotton Mills Number Two, Inc., for those years. As we said in *Jordahl & Co.*, 35 B. T. A. 1136, 1139, "It is now well settled that the loss on the sale of the stock or liquidation of a subsidiary company must be reduced by the amount of the subsidiary's operating losses which were availed of to reduce the taxable income of the affiliated group. *Ilfeld Co.* v. *Hernandez*, 292 U. S. 62; *McLaughlin* v. *Pacific Lumber Co.*, 293 U. S. 351; *Commissioner* v. *National Casket Co.*, 78 Fed. (2d) 940; *Greif Cooperage Corporation* v. *Commissioner*, 85 Fed. (2d) 365." See also *United States* v. *Lakewood Engineering Co.*, 70 Fed. (2d) 887; *American Tobacco Co.* v. *Bowers*, 94 Fed. (2d) 1010; certiorari applied for May 14, 1938.

Although the cases cited above involved either the sale or liquidation by a parent company of the stock of its subsidiary and did not involve the situation where the stock of the subsidiary became worthless during the taxable year, the controlling principle of law involved is nevertheless the same in the latter situation as in the former. Cf. *H. Liebes & Co.*, 23 B. T. A. 787, 791. In so holding we are not unmindful of our decision in *Manatee Crate Co.*, 22 B. T. A. 996, wherein we allowed the parent company to deduct the full cost of the stock of its subsidiary in 1924, the year in which the stock of the subsidiary became worthless, without making any inquiry into the extent to which the consolidated group had had the benefit of the losses of the subsidiary for the years 1921, 1922, and 1923. Our holding there was, however, promulgated several years before the decisions of the Supreme Court cited above, and must be regarded as in effect modified to conform therewith. Cf. *Prosperity Co.*, 27 B. T. A. 28.

The record shows that for two of the years, 1925 and 1933, petitioner availed itself, in a consolidated return, of operating losses of its subsidiary to the extent of $9,683.01 and $28,434.23, respectively, or a total for both years of $38,117.24. Petitioner's claimed loss of $100,000 would, in view of the above decisions, have to be reduced by this amount. For the years 1926, 1930, and 1931, petitioner itself sustained operating losses and therefore for those three years did

**330**

not avail itself of any deduction of its subsidiary's losses. For the year 1927 petitioner had a net taxable income and its subsidiary also had a small net income, which was wiped out by bringing forward its net loss for 1926. The evidence shows, however, that none of this net loss of the subsidiary brought forward from 1926 was used as a deduction from petitioner's net income. For the year 1929, the subsidiary had a net income and therefore petitioner had no deduction for that year of any loss by its subsidiary. The foregoing accounts for all the taxable years in which consolidated returns were filed. The net result of this evidence is that petitioner's net taxable income during the years in which it filed consolidated returns with its subsidiary, American Cotton Mills Number Two, was reduced $38,117.24 by the operating losses of the subsidiary. In a recomputation under Rule 50, petitioner's loss of $100,000 by reason of the stock of American Cotton Mills Number Two becoming worthless in 1935 should be reduced by $38,117.24.

*Decision will be entered under Rule 50.*