Samuel Mannarino and Rose Mannarino v. Commissioner.
Mannarino v. Commissioner
Docket No. 80937.
United States Tax Court
T.C. Memo 1964-246; 1964 Tax Ct. Memo LEXIS 94; 23 T.C.M. (CCH) 1476; T.C.M. (RIA) 64246; 21 Oil & Gas Rep. 476; September 18, 1964
Vincent M. Casey, for the petitioners. Charles A. Boyce, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent *95 determined a deficiency of $5,069.38 in the income tax of petitioners and an addition to tax of $140.80 for failure to pay estimated income tax for the calendar year 1956. The issues for decision are (1) whether petitioners are entitled to a deduction, under either section 165(c) or section 166(d), Internal Revenue Code of 1954, [1] as a result of the worthlessness of a subordinated deed of trust; (2) whether petitioners are entitled to a deduction under section 165(c) for a loss incurred in an oil-drilling venture; and (3) whether petitioners are subject to an addition to tax under section 6654 for the underpayment of estimated income tax. Findings of Fact The stipulated facts are hereby found accordingly. Petitioners Samuel Mannarino (hereinafter sometimes referred to as petitioner) and Rose Mannarino, his wife, reside at 201 Highland Avenue, New Kensington, Pennsylvania. Petitioners filed their 1956 joint tax return, using the cash basis of accounting, with the district director of internal revenue, Pittsburgh, Pennsylvania. On Schedule D of the return, petitioners *96 claimed a short-term capital loss on "Second Mortgage Brite, Inc.," acquired on January 1, 1956, in the amount of $30,000 and a long-term capital loss on "Investment in Dry Well," acquired in 1954, in the amount of $1,500. Respondent, by notice of deficiency mailed to petitioners on March 27, 1959, determined that the claimed losses were not allowable. Petitioner was the president and majority stockholder of Brite, Inc., which was incorporated under the laws of Nevada in 1954. Brite, Inc., did not maintain books or records or file corporate tax returns. Neil Berk (hereinafter referred to as Berk) was a stockholder and secretary of Brite, Inc.
On May 28, 1954, Brite, Inc., executed a "Deed of Trust" in favor of Monaco, Inc., a Nevada corporation, securing a $54,000 indebtedness to Monaco, Inc. This deed of trust was subject to: (1) Taxes for the fiscal year 1954. (2) Rights of way, reservations, restrictions, and conditions of record, and (3) Prior Deeds of Trust, as follows: (a) A Trust Deed to Pioneer Title Insurance and Trust Company, a corporation, Trustee, executed by A. Joseph Geist and Cecile A. Geist, his wife, to secure their note in the sum of $35,820.00 * * *. *97 (b) A Trust Deed to Pioneer Title Insurance and Trust Company, a corporation, Trustee, executed by Monaco, Inc., a Nevada Corporation to secure its note in the sum of $32,156.24 * * *. This instrument was recorded June 9, 1954, in the Office of the County Recorder of Clark County, Nevada (hereinafter referred to as the Recorder's Office), as Document No. 12177, Book 11. An instrument entitled "Assignment," dated June 9, 1954, was executed in the name of Monaco, Inc., by its president, Huey Young, and its secretary, Berk, in favor of Sue Young, the wife of Huey Young. The Assignment read in part: For valuable consideration, to us in hand paid, receipt of which is hereby acknowledged, we hereby sell, assign, transfer and turn over unto SUE YOUNG of Las Vegas, Nevada, all our right, title and interest in and to that certain Promissory Note secured by Deed of Trust dated the 28th day of May, 1954 and recorded the 9th day of June, 1954 in the [Recorder's Office] as Document No. 12177. And we hereby give and grant unto said SUE YOUNG full power and authority to collect and receive upon said Promissory Note and Deed of Trust from Brite, Inc., a Nevada corporation, in our place and *98 stead the sum of Fifty Four Thousand and 00/100 Dollars ($54,000.00), with interest thereon, and take all necessary proceedings for the collection thereof * * *. This instrument was recorded September 16, 1954 in the Recorder's Office as Document No. 20284, Book 22. On June 23, 1954, Brite, Inc., borrowed $100,000 from the Silver State Building & Loan Association (hereinafter referred to as Silver State). At that time Brite, Inc., executed a "Note Secured by Deed of Trust" payable to Silver State in the amount of $100,000, with interest, and a "Deed of Trust," naming Silver State as beneficiary and Federal Guaranty Corporation (hereinafter referred to as Federal Guaranty) as trustee. The Deed of Trust was recorded July 26, 1954, in the Recorder's Office, as Document No. 16228, Book 17. On July 29, 1954, Brite, Inc., borrowed an additional $70,000 from Silver State. Brite, Inc., executed a "Note Secured by Deed of Trust" payable to Silver State in the amount of $70,000, with interest, and a "Deed of Trust," naming Silver State as beneficiary and Federal Guaranty as trustee. This Deed of Trust was recorded August 4, 1954, in the Recorder's Office, as Document No. 16959, Book 17. *99 On the same day, July 29, 1954, Monaco, Inc., executed a "Subordination Agreement," in which it agreed to subordinate the Deed of Trust it had received on May 28, 1954. The Subordination Agreement stated in part: AND WHEREAS said SILVER STATE * * * refuses to make said loans except upon the condition that the undersigned MONACO, INC. shall subordinate all of their right and interest under said Deed of Trust recorded June 9, 1954 referred to above to the lien of the said One Hundred Thousand Dollar ($100,000.00) Trust Deed, and to the lien of the said Seventy Thousand Dollar ($70,000.00) Trust Deed. AND WHEREAS, the interest of MONACO, INC. may best be served by inducing SILVER STATE * * * to make said loan by so subordinating their interest under said One Hundred Thousand Dollar ($100,000.00) Deed of Trust and said Seventy Thousand Dollar ($70,000.00) Deed of Trust respectively to the lien of such Fifty-Four Thousand Dollar ($54,000.00) Deed of Trust. NOW, THEREFORE, for fair and adequate consideration, receipt whereof in full is hereby acknowledged, MONACO, INC. for the purpose of inducing SILVER STATE * * * to make said loan as aforesaid, agree to and do hereby subordinate *100 all of their right, title, and interest in, under, to and in connection with said Fifty-Four Thousand Dollar ($54,000.00) Deed of Trust, to the lien of the said One Hundred Thousand Dollar ($100,000.00) Deed of Trust and said Seventy Thousand Dollar ($70,000.00) Deed of Trust * * *. The Subordination Agreement was recorded at the Recorder's Office on August 4, 1954, as Document No. 16960, Book 17. On June 10, 1955, Brite, Inc., borrowed an additional $45,000 from Silver State (which had changed its name to Silver State Savings and Loan Association) and, as evidence of the debt, executed a "Note Secured by Deed of Trust." Rather than execute another deed of trust, the Deed of Trust recorded at No. 16228, Book 17, was modified to include the additional $45,000 by an "Amendment to Deed of Trust," dated June 23, 1955 and recorded as Document No. 53896, Book 64. This instrument was signed by petitioner and Berk for Brite, Inc., by Federal Guaranty as trustee, and by Silver State as beneficiary. It was also signed by Sue Young as "Beneficiary of Subordinated Trust Deed recorded as Document No. 12177, Clark County, Nevada, records." Silver State, on December 6, 1955, gave notice of *101 breach and election to sell under the Deed of Trust recorded August 4, 1954 as Document No. 16959, Book 17. The sale, which occurred in 1956, removed all assets from the ownership of Brite, Inc.
On April 13, 1956, Federal Guaranty issued a "Trustee's Deed Upon Sale" to Silver State as grantee. This instrument was recorded on April 16, 1956, at the Recorder's Office as Document No. 75456, Book 91. A cashier's check for $29,000 on the National Deposit Bank, Arnold, Pennsylvania, was drawn payable to petitioner's order on January 18, 1955. The check was endorsed first by petitioner and then by Sue Young. A deposit slip in Florida National Bank, of Miami, Florida, showed a deposit of $29,000 on January 25, 1955, to the account of Sue Young. An installment note dated January 20, 1955 and drawn by petitioner provided that the amount of $20,000 was payable to the order of Sue Young as follows: * * * [On] the dates and in the amounts specified below, to-wit: $5,000.00 on the 20th day of April, 1955 and quarterly thereafter until paid. Interest payable quarterly in addition to and together with each principal installment. * * * Subsequent to the execution of the installment note, *102 petitioner made one $5,000 payment. On or about April 8, 1957, a complaint was filed in the United States District Court for the Western District of Pennsylvania entitled as follows: Sue Young, Plaintiff v. Sam Mannarino, Defendant] Civil Action No. 15662 Petitioner settled the suit, which was for the $15,000 balance due on the installment note, by the payment of $10,000 to Herman E. Kohen (hereinafter referred to as Kohen), attorney for Sue Young. On May 13, 1957, Kohen acknowledged receipt of the $10,000 as follows: Received of [petitioner] the sum of $10,000.00 as follows: $5,000.00 in the form of a check dated May 13th, 1957 drawn on the National Deposit Bank of Arnold, Pennsylvania, and $5,000.00 in cash. This aggregate sum of $10,000.00 is in full settlement of all the moneys due from [petitioner] to Sue Young on that certain obligation, to-wit: A note dated January 20, 1955 in the principal sum of $20,000.00 which is now the subject of a law suit in the United States District Court, Western District of Pennsylvania, same being entitled Sue Young v. [petitioner] and being Case No. 15662. On February 23, 1961, the Nevada Secretary of State certified that: *103 * * * [The] Charter of BRITE, INC.
incorporated under the laws of the State of Nevada, on July 10, 1954 was revoked on the 1st Monday in March of 1956 for failure to file annual list of officers, directors, designations of Resiednt [Resident] Agent and his acceptance thereof, for the period July 1, 1955 to July 1, 1956 and to pay the filing fee and penalty thereon pursuant to the provisions of Chap. 180, Statutes of Nevada, 1925, as amended I further certify that since said revocation said Charter has not been reinstated. * * * In September 1954 petitioner invested in a gas and oil venture in Connoquenessing Township, Butler County, Pennsylvania, paying $1,500 for a 6/150th interest in the proceeds from the sale of any gas or oil marketed from the well. No gas or oil was ever discovered, and petitioner never realized anything from the investment. Petitioner was informed in 1956 that the venture had encountered a dry hole. He made no effort to determine when the hole was found to be dry. On their 1956 return petitioners showed "Payments and Credits on 1956 Declaration of Estimated Tax" of $4,053.31. A tax liability of $11,535.36 was reported for the year. Opinion *104 Relying on either section 165(c) [2] or section 166(d)[3], the petitioners contend that they are entitled to a deduction as a result of the worthlessness of a subordinated deed of trust. [4] Under Nevada law, a deed of trust is at least akin to, and at times is the same as, a mortgage. See Nev. Rev. Stat., ch. 106 and 107, especially § 107.060 (1957). If, as petitioner argues, he did purchase the deed of trust, any deduction for worthlessness must find support in section 166(d). Section 166(d), referring to bad debts, and section 165(c), comprehending individual losses, are mutually exclusive. Spring City Co. v. Commissioner, 292 U.S. 182, 189 (1934); Dominick J. Salomone, 27 T.C. 663, 669 (1957). The worthlessness of mortgages being limited to deductibility under section 166(d), see Brown v. United States, 95 F. 2d 487 (C.A. 3, 1938); cf. also sec. 1.166-6, Income Tax Regs., the worthlessness of Nevada deeds of trust, by parity of reasoning, must likewise be so limited.
*105 The petitioners have a two-fold burden to overcome in this proceeding. See Theatre Inv. Co. v. Commissioner, 119 F. 2d 477 (C.A. 9, 1941), affirming a Memorandum Opinion of this Court. First, they must show that the debt [5] was actually acquired by the petitioner. See Philip H. Schaff, 46 B.T.A. 640 (1942); J. S. Cullinan, 19 B.T.A. 930 (1930). And, secondly, they must show that the debt was not worthless when acquired. See Eckert v. Burnet, 283 U.S. 140 (1931); Kinkead v. Commissioner, 71 F. 2d 522 (C.A. 3, 1934), affirming a Memorandum Opinion of this Court. In our opinion the petitioners have not satisfied their burden of proof with respect to either of these. *106 Petitioners have asserted that the $29,000 cashier's check and the $20,000 installment note were given in payment of the deed of trust. However, they have offered no proof, other than petitioner's obviously self-serving statements, that such was the case. Neither the cashier's check, nor the note, nor Kohen's acknowledgment of the settlement of the suit for the balance due on the note, give any indication as to the reason for which the note was drawn. As the respondent has noted, on brief, "[a] person can have many obligations and the fact that petitioner paid Sue Young $29,000 and indebted himself for another $20,000 is no evidence that these payments were made for the purchase of a second mortgage." In contrast to this lack of substantiation are the factors militating against the petitioners. The deed of trust petitioner claims to have purchased was recorded as Document No. 12177. Yet in June 1955, six months after petitioner claims to have purchased the deed of trust, Sue Young, not petitioner, signed an "Amendment to Deed of Trust" as "Beneficiary of Subordinated Trust Deed recorded as Document No. 12177, Clark County, Nevada, records." Moreover, we note that every other *107 instrument, subordination agrement, and assignment was recorded at the Recorder's Office. But the purported assignment to petitioner was never recorded. We can only conclude, from the evidence before us, that petitioner has not sustained his burden of proving that Document No. 12177 was ever assigned to him, and that the respondent's determination must therefore be upheld. Cf. W. D. Roussel, 37 T.C. 235 (1961); Seaboard Commercial Corporation, 28 T.C. 1034 (1957); and Western Products Co., 28 T.C. 1196 (1957). Petitioners also claimed a deduction for a loss on "Investment in Dry Well." As we have found, petitioner, upon learning in 1956 that the venture had encountered a dry hole, made no effort to determine when the hole was found to be dry. Where a loss is claimed to be deductible because of worthlessness, it is not enough to prove that the investment was worthless in a particular year, but it must be proved that the investment became worthless in that year. American Utilization Co., 38 B.T.A. 322, 327 (1938). Petitioners have failed to meet their burden of showing that the investment became worthless in 1956. See Denver and Rio Grande Western Railroad Co. v. Commissioner, 279 F. 2d 368 *108 (C.A. 10, 1960), affirming 32 T.C. 43 (1959); S. G. Armstrong, 24 B.T.A. 321 (1931). Therefore, we must approve the respondent's disallowance of this loss deduction. The respondent also determined that the petitioners are liable for an addition to tax under section 6654 for the underpayment of estimated income tax. Petitioners have made no attempt to show that they fall within any of the enumerated exceptions contained in the statute. Accordingly, we sustain the addition to tax asserted by respondent. Decision will be entered for the respondent. Footnotes
1. All references to Code sections herein are to the Internal Revenue Code of 1954.↩
2. SEC. 165. LOSSES. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. No loss described in this paragraph shall be allowed if, at the time of the filing of the return, such loss has been claimed for estate tax purposes in the estate tax return. ↩
3. SEC. 166. BAD DEBTS. * * *
(d) Nonbusiness Debts. - (1) General Rule. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness Debt Defined. - For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. ↩
4. Although the parties speak of the security instrument as a deed of trust or second mortgage interchangeably, it is designated in its title as a deed of trust.↩
5. A mortgage on real estate is regarded in most jurisdictions merely as security for the debt. Harold S. Denniston, 37 B.T.A. 834, 838 (1938). Nevada is one of the jurisdictions in which this is true. See IV Am., Law of Prop., § 16.82, note 2 (1952). This being so, an assignment of the deed of trust alone would be a nullity. See Carpenter v. Longan, 83 U.S. 271, 274 (1872); see also Harold S. Denniston, supra.↩And we must presume that, if petitioner acquired the deed, he also acquired the note.